DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:22-cv-0037 |
| ) | |
| JOHN CANEGATA, ROBERT SCHANFARBER, and ) | |
| VIRGIN ISLANDS REPUBLICAN PARTY a/k/a ) | |
| VIGOP PAC, ) | |
| ) | |
| Defendants. ) | |

**ATTORNEYS:**

**Cameron T. Norris, Esq.**
**Frank H. Chang, Esq.**
**Tyler R. Green, Esq.**
Consovoy McCarthy PLLC
Arlington, VA
*For Plaintiff Republican National Committee,*

**Kevin F. D'Amour, Esq.**
**Gaylin Vogel, Esq.**
Barnes, D'Amour and Vogel
St. Thomas, U.S.V.I.
   *For Plaintiff Republican National Committee,*

**Yohanna M. Manning, Esq.**
**Charlotte S. Sheldon, Esq.**
**Scot F. McChain, Esq.**
McChain Hamm & Associates
St. Croix, U.S.V.I.
   *For Defendants John Canegata, Robert Schanfarber, and Virgin Islands Republican Party.*

## <u>MEMORANDUM OPINION</u>

**Molloy,** *Chief Judge.*

**BEFORE THE COURT** is Plaintiff Republican National Committee's ("RNC") motion for temporary restraining order, filed May 20, 2022. (ECF No. 2.) To the extent RNC sought a

temporary restraining order, that motion was denied on May 23, 2022. (ECF No. 7.) Now before the Court is the motion's alternate relief, a request for preliminary injunction.

A hearing was held on RNC's motion for preliminary injunction on June 8, 2022. At the conclusion of the June 8 hearing, a briefing schedule was set in lieu of oral argument. RNC filed its brief on June 22, 2022. (ECF No. 43.) Defendants filed their response on July 11, 2022 (ECF No. 47) and RNC filed a reply on July 20, 2022 (ECF No. 53.)

In that hearing, RNC called no witnesses, instead only admitting Plaintiff's Exhibit A, registrations for seven RNC-owned marks registered with the United States Patent and Trademark Office. However, the remainder of RNC's exhibits were authenticated by and admitted during Defendants' case in defense, by John Canegata ("Canegata"). For the reasons set forth herein, the Court will grant RNC's motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Canegata was at one time the Chairman of the Virgin Islands Republican Party and testifies that he still holds such office. The Virgin Islands Republican Party operates the website usvigop.org (the "website"). The website prominently displays the phrase "GOP," a stylized right-facing elephant viewed in profile bearing three stars on its back, links bearing the phrase "2016 Republican National Convention," and websites for each of its members bearing "@usvigop.org." The Virgin Islands Republican Party engages in fundraising to support candidates with conservative views.

The RNC holds several legally registered trademarks, including the phrases "RNC," "Republican National Committee," "Republican National Convention," "GOP," and several variations of a stylized elephant viewed in right-facing profile bearing three stars on its back.

In mid-to-late April 2022, Canegata received a cease-and-desist letter from RNC demanding that Canegata immediately cease and desist from any use of RNC's registered trademarks. That letter further stated that Canegata is no longer the Chairman of the Virgin Islands Republican Party, demands that Canegata refrain from making any reference to the RNC that would lead individuals to believe that he or the VIGOP were somehow affiliated

---

[1] All facts herein were deduced from testimony and exhibits introduced at the hearing on RNC's motion for preliminary injunction, held June 8, 2022.

with the RNC, and references an August 2020 mandate by RNC that "all VIGOP-branded political activity, political action committees, and fundraising be placed on hold." RNC's demands specifically included ceasing and desisting use of the VIGOP name and usvigop.org domain. With the exception of one (Ex. A at 11), each of these marks were registered between 1995 and 2001, and have been renewed by affidavit at six- and ten-years following registration.

## II. LEGAL STANDARD

The test for preliminary relief is a familiar one. A party seeking a preliminary injunction must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citing *Allegheny Energy, Inc. v. DQE, Inc.,* 171 F.3d 153, 158 (3d Cir. 1999)). Preliminary injunctive relief is "an extraordinary remedy" and "should be granted only in limited circumstances." *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.,* 42 F.3d 1421, 1427 (3d Cir. 1994) (quotation omitted). "[O]ne of the goals of the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable, noncontested status of the parties." *Opticians Ass'n of Am. v. Indep. Opticians of Am.,* 920 F.2d 187, 197 (3d Cir. 1990) (citation and quotation omitted); *see also Kos Pharms.*, 369 F.3d at 708 (citing 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:50 (4th ed. 2003) ("The status quo to be preserved is not the situation of contested rights. . .. In a trademark case, [it] is the situation prior to the time the junior user began use of its contested mark: the last peaceable, non-contested status.")).

## III. DISCUSSION

Here, RNC has pled three violations of the Lanham Act, codified at 15 U.S.C. §§ 1501 *et seq.*: one count of trademark infringement under 15 U.S.C. § 1114, a second count of trademark infringement under 15 U.S.C. § 1125(a), and a third count of trademark dilution under 15 U.S.C. § 1125(c). Actions under section 1114 and section 1125(a) are measured by identical standards. *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198,

210 (3d Cir. 2000). Because each count seeks to enjoin defendants from the same conduct, a likelihood of success on any count, combined with a sufficient showing of the remaining elements for a preliminary injunction, will necessarily entitle RNC to a preliminary injunction. Accordingly, because the Court finds that RNC is entitled to a preliminary injunction on its trademark infringement claims, the Court declines to reach RNC's trademark dilution claim herein.

### A. Likelihood of Success on the Merits

Here, RNC specifically seeks to enjoin Defendants from all usage of the trademarks "RNC," "GOP," "Republican National Convention," and the RNC's elephant logo mark, as well as from making any references to the RNC that lead individuals to believe defendants are affiliated with the RNC. *See generally* ECF No. 3.

To prove federal trademark infringement under the Lanham Act, "a plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear,* 237 F.3d at 210 (citing *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency*, Inc., 214 F.3d 432, 437 (3d Cir. 2000)). The plaintiff bears the burden of proof. *Id.* at 210-11 (citing *American Home Prods. Corp. v. Barr Labs., Inc.*, 834 F.2d 368, 371 (3d Cir. 1987)). The Court will turn first to whether RNC's trademarks are valid and legally protectable.

### 1. **Valid and Legally Protectable Mark**

"The first two requirements, validity and legal protectability, are proven where. . . a mark was federally registered and has become 'incontestable' under the Latham Act , 15 U.S.C. §§ 1058 and 1065." *Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 30 F.3d 466, 472 (3d Cir. 1994) (citing *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 291 (3d Cir. 1991), *cert. denied*, 502 U.S. 939). To achieve incontestability, a trademark holder must file an affidavit in its sixth year of ownership, evincing continuous use in commerce for five years following registration under sections 8 and 15 of the Lanham Act. *See* Lanham Trade-Mark Act of 1946, 50 Stat. 427 § § 8, 15 (Jul. 5, 1946) *codified, as amended at* 15 U.S.C. § § 1058, 1065(3).

Here, RNC has filed affidavits under sections 8 and 15 on each of its trademarks except one. *See* Ex. A. There is no evidence of VIGOP's use of the remaining trademark – a stylized elephant depicted in right-facing profile with three stars on its back, specifically in red and white with a red circle surrounding it ("the circled elephant.") *See id.* at 11. Therefore, each of the other trademarks are incontestable, making them necessarily valid and legally protectable.

As to the circled elephant, "[i]f the mark has not been federally registered or, if registered, has not achieved incontestability, validity depends on proof of secondary meaning. . . ." *Fisons Horticulture*, 30 F.3d at 472 (citing *Ford Motor*, 930 F.2d at 291). Secondary meaning is demonstrated where, "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product itself." *Ford Motor Co.*, 930 F.2d at 292 (quoting *Freixenet, S.A. v. Admiral Wine & Liquor Co.,* 731 F.2d 148, 152 (3d Cir. 1984)). "Although there are numerous cases determining secondary meaning, there is no consensus on its elements." *Amer. Scientific Chem., Inc. v. Amer. Hosp. Supply Corp.*, 690 F.2d 791, 792 (9th Cir. 1982). A non-exclusive list of factors which may be considered includes "the extent of sales and advertising leading to buyer association, length of use, exclusivity of use, the fact of copying, customer surveys, customer testimony, the use of the mark in trade journals, the size of the company, the number of sales, the number of customers, and actual confusion." *Ford Motor Co.,* 930 F.2d at 292 (collecting cases).

While an application has been filed, the circled elephant has not been federally registered. *See* Ex. A, at 11. However, the circled elephant is stylistically identical to RNC's other incontestable marks. While there is no evidence of length of use or exclusivity of use, customer surveys, number of sales, or any similar factors, the Court finds that the incontestability of RNC's other stylized elephant marks strongly indicates that the circled elephant possesses secondary meaning directly associating it with the RNC. Therefore, the circled elephant is, too, valid and legally protectable.

2. **Ownership of the Mark**

Here, the United States Patent and Trademark Office registration clearly indicates that the owner of each trademark at issue is RNC. *See generally* Ex. A (showing "Republican

National Committee" as the owner of each individual mark). Defendants concede in their brief that they "do not dispute that Plaintiff has valid and legally protected marks or that it owns the marks, for that matter." ECF No. 47, at 4. Therefore, the Court finds that this element has been satisfied.

### 3. **Likelihood of Confusion**

A likelihood of confusion exists when "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d Cir. 1992) (quotation marks omitted). In *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir. 1983), the Third Circuit stated that when the goods involved in a trademark infringement action directly compete with each other, a court "need rarely look beyond the mark itself" to determine the likelihood of confusion. *Id.* at 462. While "many of the *Lapp* factors that are specifically applicable only to noncompeting goods," the Third Circuit later held that "the *Lapp* test is to be employed when examining both competing and noncompeting goods." *A & H Sportswear*, 237 F.3d at 212-13.

> "Therefore, likelihood of confusion for both competing and noncompeting goods should be tested with reference to the following:
>
> (1) the degree of similarity between the owner's mark and the alleged infringing mark;
> (2) the strength of the owner's mark;
> (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;
> (4) the length of time the defendant has used the mark without evidence of actual confusion arising;
> (5) the intent of the defendant in adopting the mark;
> (6) the evidence of actual confusion;
> (7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media;
> (8) the extent to which the targets of the parties' sales efforts are the same;
> (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors;

(10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market."

*Id.* at 215. The Court will address these factors in turn.

### a. Degree of Similarity

In this case, defendants' marks are identical to RNC's registered marks. Defendants' website prominently displays "GOP" at the top left corner of its page. Ex. C. A link to the right of the page directly states, "Republican National Convention." *Id.* The top left corner of the page displays a stylized elephant depicted in right-facing profile view with three stars on its back and colored in blue and red. *Id.* Defendants' elephant is virtually identical to RNC's trademark, with the sole difference of defendants' elephant being depicted at a slight angle. *Compare* Ex. A *with* Ex. C at 9. "[L]ikelihood of confusion is inevitable when, as in this case, the identical mark is used concurrently by unrelated entitles." *Opticians Ass'n*, 920 F.2d at 195. The marks used by RNC and defendants are substantively identical. Thus, the Court finds that this factor weighs very strongly in favor of RNC.

### b. Strength of the Marks

"With respect to Lapp factor (2),'the strength of the owner's mark,'. . . the *Fisons* test, [] measures mark strength by (1) the distinctiveness or conceptual strength of the mark; and (2) the commercial strength or marketplace recognition of the mark." *A & H Sportswear*, 237 F.3d at 221 (internal quotations and citations omitted). "The first prong of this test looks to the inherent features of the mark; the second looks to factual evidence of 'marketplace recognition.' " *Id.* (citing *Fisons*, 30 F.3d at 479). Because neither party provided any factual evidence of marketplace recognition, the Court will look only to the first prong of the test.

In evaluating the conceptual strength of a trademark, "marks are divided into four classifications: (1) generic (such as "DIET CHOCOLATE FUDGE SODA"); (2) descriptive (such as "SECURITY CENTER"); (3) suggestive (such as "COPPERTONE"); and (4) arbitrary or fanciful (such as "KODAK")." *Id.* (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). "In order to qualify for Lanham Act protection, a mark must either be suggestive,

arbitrary, or fanciful, or must be descriptive with a demonstration of secondary meaning. Generic marks receive no protection; indeed, they are not 'trademarks' at all." *Id.* at 222 (internal citations omitted). Arbitrary or fanciful marks use terms that neither describe nor suggest anything about the product; they "bear no logical or suggestive relation to the actual characteristics of the goods." *Id.* at 221 (citation omitted). Suggestive marks require consumer "imagination, thought, or perception" to determine what the product is. *Id.* at 221-22 (citation omitted). Descriptive terms "forthwith convey[ ] an immediate idea of the ingredients, qualities or characteristics of the goods." *Id.* at 222 (citation omitted). Generic marks are those that "function as the common descriptive name of a product class." *Id.* (citation omitted).

The Court finds that each of RNC's marks are either arbitrary or suggestive. Objectively, "GOP," "RNC," and the stylized elephant variations suggest nothing about RNC's stated product, the promotion of goods, services, and interests of the Republican political party. *See* Ex. A. Indeed, the Court posits that the only reason these marks suggest anything is due to the strength of the marks. The mark "Republican National Committee" is suggestive to the extent that it requires perception or thought to indicate that it denotes a national committee of Republicans.

However, the category into which a mark falls, while a useful guidepost, is not dispositive of its strength. *A & H Sportswear*, 237 F.3d at 222. "Suggestive or arbitrary marks may, in fact, be "weak" marks, particularly if they are used in connection with a number of different products." *Id.* There is no evidence on this record of other uses of RNC's marks in other markets. *See Triumph Hosiery Mills, Inc. v. Triumph Int'l Corp.*, 308 F.2d 196, 199 n. 2 (2d Cir. 1962) ("The mark 'Triumph' is a so-called weak mark, i.e. it has been used many times to identify many types of products and services."); *Steve's Ice Cream v. Steve's Famous Hot Dogs, 3 U.S.P.Q.2d 1477, 1479* (T.T.A.B. 1987) ("[T]he numerous third-party uses [of Steve's] demonstrate that the purchasing public has become conditioned to recognize that many businesses . . . use the term . . . and . . . is able to distinguish between these businesses based on small distinctions among the marks."); *cf. S.C. Johnson & Son, Inc. v. Johnson*, 116 F.2d 427, 430 (2d Cir. 1940) ("When all is said, if a man allows the good will of his business

to become identified with a surname so common as Johnson, it is fair to impose upon him some of the risk that another Johnson may wish to sell goods not very far afield....").

Absent such evidence, the Court cannot award weight on this factor to RNC based on its marks' classification alone, especially without any factual evidence of commercial strength. After all, "[t]he plaintiff bears the burden of proof." *A & H Sportswear*, 237 F.3d at 210-11 (citing *American Home Prods.*, 834 F.2d at 371). Accordingly, this factor weighs neutrally.

### c. Intent of the Defendants

Importantly, "a defendant's mere intent to copy, without more, is not sufficiently probative of the defendant's success in causing confusion to weigh such a finding in the plaintiff's favor. . . ." *Id.* at 225-26. "[R]ather, defendant's intent will indicate a likelihood of confusion only if an intent to confuse consumers is demonstrated via purposeful manipulation of the junior mark to resemble the senior's." *Id.* at 226. Thus, the Court must be careful in parsing whether a given case evinces "an intent to deceive and success in that effort," or "an intent to copy and success in causing confusion." *Id.* Some degree of bad faith, however, is relevant to the selection of an appropriate remedy. *Id.*

Here, defendants clearly intended to copy RNC. The marks used by defendants are identical to those incontestably owned by RNC. However, based on the degree of similarity between RNC's marks and defendants use thereof, namely that they are identical, the Court finds that defendants purposefully manipulated their marks to resemble RNC's. Canegata's testimony indicates a genuine belief of entitlement to use the marks. *See, e.g.,* Hr'g Tr. at 49 ("Without a doubt, I am the chairman of the party."). While this belief of entitlement may have been severely misguided, *see* Ex. B (indicating that defendants must cease and desist any use of RNC's trademarks and any actions that indicate association), it indicates that the marks were purposefully utilized to resemble RNC's. Therefore, this factor weighs in favor of RNC.

### d. Remaining Factors

The Court finds no evidence of actual confusion, and accordingly no evidence of the length of time defendants have used the mark without evidence of actual confusion, on this

record. Neither does the Court find any evidence of similar marketing channels, similar sales efforts, the relationship in the minds of the public, or the price of the parties' services. While such evidence may likely exist, RNC's decision to call no witnesses on its behalf leaves it unable to provide proof at this stage. Accordingly, these remaining factors weigh neutrally.

e. **Weighing of the Factors**

In weighing the *Lapp* factors holistically, the Court finds that the degree of similarity and the intent of defendants weigh in favor of RNC, while the remainder weigh neutrally. The evidence on the record is relatively thin. Perhaps if RNC brought a witness, it would not be. However, the Court notes that this is not a typical trademark infringement case where two organizations adopt similar marks independently. Defendants are using RNC's *actual* trademarks, rather than simply using similar marks. Thus, notwithstanding the foregoing, "[v]ery little analysis is needed in the present case." *Opticians Ass'n*, 920 F.2d at 195. "[L]ikelihood of confusion is inevitable when, as in this case, the identical mark is used concurrently by unrelated entitles." *Id.* The marks used by defendants are identical to those used by RNC, and RNC has made clear that no affiliation exists between the parties. Therefore, despite the lack of evidence on this record, the Court finds that a high likelihood of confusion exists.

4. **Defendants' Arguments**

In their brief, defendants argue at length that RNC lacks authority to no longer recognize defendants as members, that federal law does not provide authorization to revoke defendants' permission to use RNC's trademarks, and that Virgin Islands law does not provide authorization to revoke defendants' permission to use RNC's trademarks. *See* ECF No. 47, at 4-10.

First, the argument that RNC lacks authority to remove defendants as members is irrelevant to these proceedings. In support, defendants argue that both VIGOP and RNC bylaws prohibit the removal of members absent specific circumstances which were not demonstrated here. *See id.* at 4-7. However, the question of whether defendants are members of the RNC is far subordinate to the question of whether they are permitted to use RNC's marks. *See Birthright v. Birthright, Inc.*, 827 F. Supp. 1114, 1135 (D.N.J. 1993) ("What is

critical is that Birthright Inc. knew which entity owned the mark; that Birthright Inc. knew that plaintiff monitored and controlled the use of the mark; and that Birthright Inc. knew that authorized use of the mark required the permission of plaintiff.. . . Given these facts, the court concludes, as a matter of law, that the relationship between plaintiff and Birthright Inc. amounted to an implied license authorizing the latter to use the name. An implied license is terminable at will."); *see also U.S. Jaycees v. Phila. Jaycees*, 639 F.2d 134, 146 (3d Cir. 1981) (holding when a local chapter loses affiliation to a national organization, the local organization "cannot complain when they lose the private privileges incident to affiliation."). The only relevance of VIGOP's affiliation with RNC is to the extent that it indicates that defendants have a license to use RNC's marks, and whether that license was properly revoked.

Defendants rely on "Section 203 of the Copy Right Act" for the premise that RNC cannot revoke permission to use its trademarks under federal law. ECF No. 47, at 10 Defendants argue that because "the Lanham Act does not provide any provision relating to the termination of a trademark license," the Copyright Act should apply. *Id.* Defendants therein concede that an implied licensing agreement exists between them and RNC. *Id.* at 4.

Defendants are somewhat correct – the Lanham Act does not provide any provisions relating to the termination of a trademark license. However, case law is quite explicit on the topic. "Courts are in agreement that a trademark license is terminable at will by the trademark owner, even where it is an express license . . . and certainly when the license is only implied." *Chi. Mercantile Exch. Inc. v. Ice Clear US, Inc.*, 2021 WL 3630091, at *13 (N.D. Ill. Aug. 17, 2021); *see also, e.g., Dial-A-Mattress Operating Corp. v. Mattress, Inc.*, 847 F. Supp. 18, 19 n.1 (E.D.N.Y. 1994) ("An agreement conferring a license to use a trademark for an indefinite time, whether oral, written or by implication, is terminable-at-will by the licensor."); *Birthright*, 827 F. Supp. At 1135 ("[A]n implied license is terminable at will."); *Am. Tech. Ventures, LLC v. Orlov*, 2021 WL 4973536, at *5 (S.D. Fla. June 9, 2021) (same). Therefore, while there may be no statutory authority for RNC's right to revoke permissive license to its trademarks at will, there is certainly common law support. This argument is without merit.

Lastly, the Court is not swayed by any Virgin Islands law that purports to regulate rights under the federal Lanham Act. *See, e.g., Spartan Food Sys., Inc. v. HFS Corp.*, 813 F.2d 1279, 1284 (4th Cir. 1987) ("If a conflict arises between federal and state law, . . . the Lanham Act effects a limited preemption of state law, resolving the conflict in favor of the federal registrant's rights."); *Purolator, Inc. v. EFRA Distributors, Inc.*, 687 F.2d 554, 560 (1st Cir. 1982) ("[T]he rights of [the infringer] under Puerto Rico law cannot circumscribe the rights of [the federal trademark owner] to protection for its trademark under the federal trademark laws."). Therefore, this argument fails from the outset.

In sum, the Court finds that RNC holds valid and legally protectable trademarks, that it owns those marks, and that there is a high likelihood of confusion between its marks and defendants' use of those marks. Defendants' arguments to the contrary are without merit. Accordingly, the Court finds that RNC is likely to succeed on the merits of its trademark infringement claims.

### B. Whether RNC will Suffer Irreparable Harm

"Irreparable harm 'must be of a peculiar nature, so that compensation in money alone cannot atone for it.' " *Opticians Ass'n*, 920 F.2d at 195 (quoting *Morton v. Beyer*, 922 F.2d 364, 372 (3d Cir. 1987)). "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will." *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998); *see also Opticians Ass'n*, 920 F.2d at 195 (same) (citations omitted). "Lack of control over one's mark 'creates the potential for damage to . . . reputation[, which] constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case.' " *Kos Pharms.*, 369 F.3d at 726 (quoting *Opticians Ass'n*, 920 F.2d at 196) (alterations in original). Accordingly, "trademark infringement amounts to irreparable injury as a matter of law." *Id.* (quoting *S & R Corp. v. Jiffy Lube, Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992); *see also Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 169 (3d Cir. 2000) ("potential damage to . . . reputation or goodwill or likely confusion between parties' marks" is irreparable injury). "[O]nce the likelihood of confusion caused by trademark infringement has been established, the inescapable conclusion is that there was also irreparable injury." *Pappan Enters*, 143 F.3d at 805.

Defendants argue that "[p]laintiff has failed to prove any harm without an adequate legal remedy," citing no case law in support of this proposition. ECF No. 47, at 11. Instead of a legal basis, defendants instead rely on their contention that they "are still members of the RNC; therefore, Plaintiff is not lacking control over its mark, and there has not been a creation of potential for damage to Plaintiff's reputation that would constitute irreparable injury. . ." *Id.* This is inapposite. Defendants used RNC's marks based on a license and that license has been revoked. The Court finds that RNC is entitled to a presumption of irreparable harm, because, having shown a likelihood of confusion, "trademark infringement amounts to irreparable injury as a matter of law." *Kos Pharms.*, 369 F.3d at 726.

### C. Balancing of Hardships

In evaluating a motion for preliminary injunction, "the third task a trial court must undertake is to balance the hardships of the respective parties." *Opticians Ass'n*, 920 F.2d at 197. "The basic purpose behind the balancing analysis is to ensure that the issuance of an injunction would not harm the infringer more than a denial would harm the mark's owner." *Id.*

Defendants argue that they "would not be able to properly conduct elections, events, marketing functions, fundraising or any other political activity without being able to use the federally registered trademarks and the marks for the VIGOP." ECF No. 47, at 11. However, defendants here have "openly, intentionally, and illegally appropriated" the RNC's trademarks, "despite being warned not to." *Opticians Ass'n*, 920 F.2d at 197. "By virtue of this recalcitrant behavior, the [defendants] can hardly claim to be harmed, since [they] brought any and all difficulties occasioned by the issuance of an injunction upon [them]self." *Id.* (citing *Processed Plastic Co. v. Communications, Inc.*, 675 F.2d 852, 859 (7th Cir. 1982) (after a company intentionally copied a toy car, that company did not suffer hardship because, *inter alia*, it "cannot now complain that having to mend its ways would be too expensive."); *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979) ("One entering a field already occupied by another has a duty to select a trademark that will avoid confusion. . . . Having adopted [a trademark which causes confusion, defendant] cannot now complain that having to mend its ways will be too expensive.") (alteration in original)).

*RNC v. Canegata, et al.*
Case No. 3:22-cv-0037
Memorandum Opinion
Page 14 of 16

Accordingly, the Court finds that the potential harm to RNC by not granting an injunction outweighs the potential harm to defendants if the injunction were granted.

### D. Public Interest

The final consideration is whether the issuance of a preliminary injunction furthers the public interest. "Public interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused." *Opticians Ass'n*, 920 F.2d at 197; *see Bill Blass, Ltd. v. Saz Corp.,* 751 F.2d 152, 156 (3d Cir. 1984) (there is a public interest in the protection of the trademark and to avoid confusion in the public); *SK & F, Co. v. Premo Pharm. Labs.*, 625 F.2d 1055, 1057 (3d Cir. 1980) ("preventing deception of the public is itself in the public interest").

Defendants argue that "public interest is best served if the administrative body with the most expertise in regulating political elections[] is not denied the opportunity to consider whether the plan proposed by VIGOP is a viable one." ECF No. 47, at 12. Defendants then assert that "deference should be given to the Virgin Islands Board of Elections and the BOE's recognition of VIGOP party officers." ECF No. 47, at 12. Defendants' argument is predicated on the premise that the determination of the Virgin Islands Board of Elections is a bellwether of sound election law. *But see generally Sarauw v. Fawkes*, 66 V.I. 253 (2017) (overruling the Superior Court and Virgin Islands Board of Elections, and enjoining BOE from certifying an election where an elected Senate candidate did not meet the Virgin Islands' residency requirement); *Bryan v. Fawkes*, 61 V.I. 201 (2014) (overruling the Superior Court and Virgin Islands Board of Elections, and enjoining BOE from permitting a Senate candidate to appear on the ballot where the candidate had committed a crime of moral turpitude).

The case here is straightforward. Defendants were told in August 2020 to cease all "VIGOP branded political activity, political action committees, and fundraising. . ." Ex. B. Despite this, defendants continued to fundraise under the VIGOP branding. *See* Ex. D. This is after an express revocation of defendants' authority to do so. This amounts to the defendants raising $406,786.91 by expressly misrepresenting themselves to be member-affiliates of the RNC. *See* Ex. C; Ex. D.

Often, a balancing of public interest is a more abstract exercise. Rarely is it so clearly quantifiable as it is here, by a federal filing accounting for funds raised by defendants over a fifteen-month span of their infringement. The Court finds that the public's interest in not being deceived or confused far outweighs its interest in allowing the Virgin Islands Board of Elections to carry out its duties unchecked, as defendants suggest.

### E. Bond Requirement Under Rule 65(c)

Federal Rule of Civil Procedure 65(c) states that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

Although "the amount of the bond is left to the discretion of the court, the posting requirement is much less discretionary." *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988) ("While there are exceptions, the instances in which a bond may not be required are so rare that the requirement is almost mandatory.") In other words, Rule 65(c) "mandates that a court when issuing an injunction must require the successful applicant to post adequate security." *Id.*

Neither party has addressed the bond requirement. However, RNC seeks injunctive relief to protect its trademark rights. Defendants did not offer any evidence that they will suffer a financial loss as a result of the injunction, only argument that the injunction will impede their ability to fundraise and conduct other similar events. See ECF No. 47, at 11. Therefore, the Court will require Plaintiffs to post a bond of $10,000.00 before the preliminary injunction will issue.

### IV. CONCLUSION

For the reasons set forth above, the Court finds that RNC's trademarks are valid and legally protectible, that it owns the marks, and that there is a likelihood of confusion arising from defendants' use of the marks. Thus, RNC is likely to succeed on the merits of its trademark infringement claims. The Court further finds that RNC will suffer irreparable harm absent a preliminary injunction, that RNC's potential harm outweighs defendants', and that public policy supports a preliminary injunction in this case. Accordingly, the Court finds

*RNC v. Canegata, et al.*
Case No. 3:22-cv-0037
Memorandum Opinion
Page 16 of 16

that RNC has met its burden and is entitled to a preliminary injunction on its trademark infringement claims effective at such time as RNC posts a bond for $10,000.00. Having established that RNC is entitled to a preliminary injunction on its trademark infringement claims, the Court declines to address the trademark dilution claim, as the relief requested is identical to that afforded by its trademark infringement claims. Therefore, the Court will grant RNC's motion for preliminary injunction. A separate Order follows.

**Date:** August 10, 2022                     */s/ Robert A. Molloy*
                                              **ROBERT A. MOLLOY**
                                              **Chief Judge**